# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SELECT MANAGEMENT RESOURCES, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:14-cv-1963-CAP |
| EZ SOLUTIONS, INC. & DOES 1-10, | ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Select Management Resources, LLC ("Plaintiff") hereby brings this Complaint against Defendant EZ Solutions, Inc. and Does 1-10 ("Defendants"), and shows the Court the following in support thereof.  All allegations herein are made upon information and belief, except those pertaining to Plaintiff.

## NATURE OF THE ACTION

1.

Plaintiff owns the federally-registered "Loan Max" service mark and promotes title-loan services with that mark.  Without Plaintiff's permission or consent, Defendants are using Plaintiff's mark to promote identical title-loan services.  In this manner, Defendants are stealing Plaintiff's goodwill, confusing

the consuming public, and damaging Plaintiff's brand, all for Defendants' financial gain.  This is an action to enjoin Defendants' unlawful conduct and recover damages from Defendants for the same.

## PARTIES, JURISDICTION, AND VENUE

2.

Plaintiff Select Management Resources, LLC is a limited liability company organized and existing under the laws of the State of Georgia.  Plaintiff's principal place of business is located at 3440 Preston Ridge Road, Suite 500, Alpharetta, Georgia 30005.

3.

Plaintiff owns the federally-registered "Loan Max" service mark (the "LoanMax Mark"), and performs certain management functions for various title-loan lending companies that are licensed to use the LoanMax Mark (the "LoanMax Lenders").  Through the LoanMax Lenders, Plaintiff operates in, among other states, Arizona, Georgia, Missouri, and South Carolina.  Plaintiff and the LoanMax Lenders are closely affiliated by common ownership and control.

4.

Defendant EZ Solutions, Inc. ("EZ Solutions") is a corporation organized and existing under the laws of the State of Illinois.  EZ Solutions' principal place

of business is located at 1500 Skokie Blvd #101, Northbrook, Illinois 60062.  EZ
Solutions may be served with process by delivery of a copy of the summons and
this Complaint to its registered agent Joshua Tolan at 585 Cherokee Road,
Highland Park, Illinois 60035.

5.

EZ Solutions also operates under the assumed name "Car Title Loans."

6.

EZ Solutions is in the business of generating customer leads for title-loan
companies through websites it owns and operate.  One of the websites sites EZ
Solutions owns and operates is www.loanmaxcash.com.

7.

Does 1-10 are those currently-unknown defendants who are acting in concert
with EZ Solutions to accomplish the acts described in this Complaint.  Does 1-10
may be principals of, clients of, and/or business partners with, EZ Solutions.  Once
identified through discovery, identifiable persons and/or entities will be substituted
in place of Does 1-10.

8.

Defendants regularly transact and solicit business in Georgia through
www.loanmaxcash.com and the other websites they own and operate.

9.

On www.loanmaxcash.com, Defendants repeatedly solicit business in Georgia.  For example, the page http://www.loanmaxcash.com/around/georgia/ states:

a)  "GET A TITLE LOAN WITH GEORGIA LOAN MAX TODAY."

b)  "Apply to get your Georgia Loan Max Title Loan, and you'll quickly be on your way to a large sum of money."

c)  "Fast cash is difficult to come by these days.  However, with a Title Loan through *Loan Max in Georgia*, you won't have to wait. Just apply on our website, and we'll send you a free quote instantly.  Our specialists can search the best title loan for you within the Peach State, and hand you up to $50,000 in less than 24 hours."

d)  "Three simple steps are all that's necessary to receive your Loan Max Loan in Georgia."

10.

As a result of Defendants' use of the LoanMax Mark on www.loanmaxcash.com, Defendants have caused consumer confusion and harm to Plaintiff in the State of Georgia, in this judicial district.

11.

This lawsuit arises out of the facts in the three foregoing paragraphs. Therefore, this Court has personal jurisdiction over Defendants.

12.

This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331, 1338(a) and (b), and principles of supplemental jurisdiction.

13.

This Court also has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(a)(2) because: (a) there is complete diversity of citizenship between Plaintiff and Defendants; and (b) the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

14.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to the Court's personal jurisdiction in this judicial district.

## STATEMENT OF FACTS

**A.** **Plaintiff invests substantial resources into developing its LoanMax Mark.**

15.

Plaintiff owns all right, title, and interest in the LoanMax Mark, United States Patent and Trademark Office Registration No. 3,084,648, which is a mark

registered in International Class 036.  The LoanMax Mark encompasses the use of the words "Loan Max."  A true and correct copy of the LoanMax Mark Registration Certificate is attached hereto as Exhibit "A."

16.

The LoanMax Mark is used to promote financial services, namely automobile title loans, including title pawn loans, title pledge loans, and motor vehicle lines of credit.

17.

Plaintiff has licensed the LoanMax Lenders to use the LoanMax Mark. Plaintiff, which is closely affiliated with the LoanMax Lenders due to common ownership, supervises, manages, and controls the LoanMax Lenders' use of the LoanMax Mark.

18.

The LoanMax Mark is inherently distinctive.

19.

Plaintiff and the LoanMax Lenders, under Plaintiff's supervision, management and control, have spent significant amounts of money engaging in extensive advertising, marketing, and promotion of their identity, products, and services throughout the United States using the LoanMax Mark since at least 2006.

20.

Certain of Plaintiff's and the LoanMax Lenders' advertising, marketing, and promotional efforts include the use of the LoanMax Mark on the internet.

21.

As a result of the foregoing advertising and promotional efforts, and the consistent high quality of the LoanMax Lenders' services, the LoanMax Mark has acquired and now enjoys a high degree of distinctiveness and secondary meaning.

22.

The LoanMax Mark is now recognized by the consuming public generally and Plaintiff's and the LoanMax Lenders' customers specifically as identifying exclusively the LoanMax Lenders' title-loan services.

23.

Plaintiff is the senior user of the LoanMax Mark on the internet and in every state in which the LoanMax Lenders conduct business.

**B.     Defendants develop a parasitic lead-generation business model.**

24.

Defendants are in the business of generating "application leads" for title-loan companies that sign up to be part of Defendants' network.

25.

Defendants describe their lead-generation business in their "ezLoanPartner Program Packet" (the "Loan Partner Packet").

26.

A true and correct copy of the Loan Partner Packet is attached hereto as Exhibit "B."

27.

As Defendants explain in their Loan Partner Packet and on their website, www.ezloanpartner.com, Defendants' lead-generation business works as follows:

a) Defendants contract with title-loan companies (Defendants' "Title Loan Clients") interested in having Defendants send them potential customers.

b) Defendants' Title Loan Clients agree to pay Defendants a fee when potential customers sent by Defendants become actual customers of Defendants' Title Loan Clients.

c) Defendants own and operate a number of lead-generation websites that appear, on their face, to either offer title-loan services or match consumers with companies that provide title-loan services (Defendants' "Lead-Generation Websites").

d) Defendants use these Lead-Generation Websites to generate potential clients for Defendants' Title Loan Clients.

e) Defendants' Lead-Generation Websites include advertisements designed to induce consumers to apply for a loan on the Lead-Generation Website.

f) Once a consumer fills out an application on a Lead-Generation Website, the application is transmitted to whichever of Defendants' Title Loan Clients owns a title-loan store closest to the address the consumer lists on her application.

g) At or near the same time, the consumer receives "an instant notification of preapproval via e-mail, fax, and text message."

h) The message that the consumer receives includes "how much cash the [consumer is] approved for, the requirements of the [specific Title Loan Client receiving the application], directions to [that Title Loan Client's] location, and [that Title Loan Client's] contact information."

i) At the same time the consumer receives the foregoing notification, the Title Loan Client's store receives "a similar message along with the customer's application."

j)   After this, one of Defendants' representatives contacts the consumer along with the Title Loan Client's store manager to make sure the consumer connects with the Title Loan Client.

k)   If the consumer ends up taking out a title loan from Defendants' Title Loan Client, Defendants' Title Loan Client pays Defendants a fee.

**C.**   **Defendants unlawfully use the LoanMax Mark and false advertisements to generate leads and turn a profit.**

28.

One of the Lead-Generation Websites Defendants own and operate is www.loanmaxcash.com.

29.

In registering, maintaining, or renewing www.loanmaxcash.com, Defendants or a person acting in concert with Defendants knowingly provided or caused to be provided materially false contact information to a domain name registrar, domain name registry, or other domain name registration authority.  Therefore, Plaintiff is entitled to a presumption that Defendants' violations of the Lanham Act described herein are willful.

30.

Defendants use Plaintiff's LoanMax mark in the www.loanmaxcash.com domain name.

31.

On the www.loanmaxcash.com site itself, Defendants repeatedly use the

LoanMax Mark.  For example, Defendants state:

a)  "APPLY FOR A CAR TITLE LOAN FROM LOAN MAX."

b)  "At Loan Max, not only do we provide cash within a day, we also
    provide exceptional service and title loan terms you just won't find
    anywhere else."

c)  "Loan Max title loans are the perfect solution to your fast cash needs."

d)  "A title loan from Loan Max is a great solution to your urgent
    financial needs."

e)  "At Loan Max, not only do we provide cash within a day, we also
    provide exceptional service and title loan terms you just won't find
    anywhere else."

f)  "To find out how much you can get and to get more information about
    how Loan Max works, apply online at your earliest convenience. Your
    cash is only a day away!"

g)  "Our title loan application can be completed online and on your own
    terms.  Once we know you're interested in Loan Max title loans, we

will put you in touch with one of our customer service

representatives."

h)  "After everything is squared away, you are free to pick up your cash

from one of the hundreds of convenient Loan Max locations scattered

throughout the country."

32.

Plaintiff has not given Defendants or any other person permission to use the

LoanMax Mark in the www.loanmaxcash.com domain name or on the

www.loanmaxcash.com website.

33.

By using the LoanMax Mark in the www.loanmaxcash.com domain name

and on the www.loanmaxcash.com site, Defendants are attempting to capitalize on

the goodwill of the LoanMax Mark to confuse consumers into mistakenly

believing that Defendants:  (a) provide title-loan services; and (b) are or are

associated or affiliated with Plaintiff and the LoanMax Lenders.  In this manner,

Defendants induce consumers to apply for loans through www.loanmaxcash.com.

34.

The "REVIEWS" page of www.loanmaxcash.com, available at

http://www.loanmaxcash.com/reviews, proves that Defendants have succeeded in

capitalizing on the goodwill of the LoanMax Mark and have actually confused consumers into mistakenly believing that Defendants: (a) provide title-loan services; and (b) are or are associated with Plaintiff and the LoanMax Lenders. The "REVIEWS" page states:

a) "'It was the dead of winter and I needed money to fix my broken heater. My credit score wasn't that great, so I used my car title to get cash. Loan Max helped me get the money I needed without all the hassles – in only 24 hours!' – Justin T., Memphis, TN"

b) "'Getting a title loan from Loan Max was the best decision I ever made. The friendly staff helped me get a hefty sum of money and I never had to go through a credit check. The best part? I got to keep my car the entire time.' – Jennifer L., Hoboken, NJ"

c) "I was worried about how I would pay off my Loan Max title loan, but my payment plan lasted a whopping 42 months! Plus, my interest rates were some of the lowest in the industry. I really appreciated the fact that Loan Max's customer service team was always available to answer my questions along the way.' – Taylor S., Simi Valley, CA"

35.

Defendants do not themselves provide title-loan services on

www.loanmaxcash.com.  Instead, Defendants solicit applications for title-loan

services on www.loanmaxcash.com using the LoanMax Mark and send the

applicants to Defendants' Title Loan Clients, who are Plaintiff's and the LoanMax

Lenders' direct competitors.

36.

Defendants are not Plaintiff or any of the LoanMax Lenders.

37.

Defendants are not associated or affiliated with Plaintiff or the LoanMax

Lenders.

38.

Both Defendants and Plaintiff's direct competitors financially benefit from

Defendants' intentional, unauthorized use of the LoanMax Mark on

www.loanmaxcash.com and Defendants' false advertising.

39.

Defendants have benefited and reaped ill-gotten gains from this scheme.

40.

Meanwhile, Plaintiff and the LoanMax Lenders have been and will continue to be seriously damaged by this scheme.  Specifically, consumers will purchase services from Defendants' competitors, believing they are associated with Plaintiff or the LoanMax Lenders.  Moreover, consumers who purchase Defendants' Title Loan Clients' services because they mistakenly believe such services are Plaintiff's or the LoanMax Lenders' will blame Plaintiff for problems with the quality of those services.  As a result, the value of the LoanMax brand will be irreparably diminished and diluted.  Moreover, even if the consumers do not experience problems with other lenders' services, Plaintiff will be irreparably harmed by the fact that the reputation of the services associated with the LoanMax Mark is at the mercy of Plaintiff's competitors, and by the fact that the strength of the LoanMax Mark is being diluted.

41.

Unless enjoined by this Court, Defendants' actions will continue to cause irreparable injury to Plaintiff, by, *inter alia*:  (a) confusing and deceiving consumers into incorrectly believing that Defendants' infringing marketing programs and associated services are affiliated, connected, sponsored, approved, or otherwise associated with the LoanMax Lenders and Plaintiff's LoanMax Mark;

(b) disrupting Plaintiff's and the LoanMax Lenders' relationships with existing customers; (c) damaging the reputation of the LoanMax Mark, Plaintiff and the LoanMax Lenders; (d) decreasing the capacity of Plaintiff's LoanMax Mark to identify and distinguish quality title-loan services; and (e) causing Plaintiff to lose customers and profits.

<u>**COUNT 1**</u>
**Federal Trademark Infringement**
**(Lanham Act, 15 U.S.C. § 1114)**

42.

Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

43.

The LoanMax Mark is inherently distinctive and has acquired secondary meaning in the minds of Plaintiff's and the LoanMax Lenders' existing and prospective customers, causing them to associate title-loan services bearing the LoanMax Mark with Plaintiff and the LoanMax Lenders.

44.

Defendants have used, and will continue to use, the LoanMax Mark in commerce in connection with the marketing of title-loan services on www.loanmaxcash.com.

45.

In using the LoanMax Mark on www.loanmaxcash.com, Defendants are deliberately and willfully capitalizing on the goodwill associated with the LoanMax Mark to cause confusion or mistake about the origin of the services Defendants are marketing, to derive a benefit from Plaintiff's and the LoanMax Lenders' business and reputation, and to promote title-loan services in direct competition with Plaintiff and the LoanMax Lenders in the same channels of trade and marketing that Plaintiff and the LoanMax Lenders use to promote their services.

46.

Defendants' use of the LoanMax Mark is in fact causing and is likely to continue to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants on the one hand with Plaintiff and the LoanMax Lenders on the other.

47.

Neither Plaintiff nor the LoanMax Lenders have consented to Defendants' use of the LoanMax Mark.

48.

The services Defendants are promoting on www.loanmaxcash.com are in no way affiliated, connected, or associated with Plaintiff or the LoanMax Lenders.

49.

Through the foregoing conduct, Defendants are willfully and intentionally confusing the public.  Therefore, Plaintiff is entitled to a presumption that Defendants' use of the LoanMax Mark is causing a likelihood of confusion.

50.

As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiff has been, and is likely to continue to be, substantially injured, as described above.

51.

Plaintiff has no adequate remedy at law to prevent Defendants' wrongful conduct.

52.

Unless enjoined by the Court, Defendants will continue to infringe on the LoanMax Mark and otherwise violate Plaintiff's rights and injunctive relief is therefore required to prevent such practices and to ameliorate and mitigate the injury to Plaintiff.

**COUNT 2**
**Federal Common Law Trademark Infringement**

53.

Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

**COUNT 3**
**Georgia Common Law Trademark Infringement**

54.

Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

**COUNT 4**
**Federal Unfair Competition**
**(Lanham Act, 15 U.S.C. § 1125(a))**

55.

Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

**COUNT 5**
**Federal Trademark Dilution**
**(Lanham Act, 15 U.S.C. § 1125(c))**

56.

Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

57.

The LoanMax mark is famous because it is widely recognized by the consuming public of the United States as a designation of source of the services of Plaintiff and the LoanMax Lenders.

58.

After the LoanMax Mark became famous, Defendants began using the LoanMax Mark in commerce, in the manners described above.

59.

In using the LoanMax Mark, Defendants willfully intended to trade on the recognition of the LoanMax Mark.

60.

Defendants' use of the LoanMax Mark is causing dilution of that mark by blurring by impairing the distinctiveness of the LoanMax Mark and lessening the capacity of that mark to identify and distinguish Plaintiff's services.

61.

Defendants' use of the LoanMax Mark is causing dilution of that mark by tarnishment by harming the reputation of the LoanMax Mark.

62.

As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiff has been, and is likely to continue to be, substantially injured, as described above.

63.

Plaintiff has no adequate remedy at law to prevent such dilution.

64.

Unless enjoined by the Court, Defendants will continue to dilute the LoanMax Mark and injunctive relief is therefore required to prevent such practices and to ameliorate and mitigate the injury to Plaintiff.

**COUNT 6**
**Georgia Statutory Trademark Dilution**
**(O.C.G.A. § 10-1-451(b))**

65.

Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

**COUNT 7**
**Federal Cyberpiracy**
**(Lanham Act, 15 U.S.C. § 1125(d))**

66.

Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

67.

Defendants registered the domain name www.loanmaxcash.com on or about
April 29, 2014.

68.

The LoanMax Mark was distinctive at the time www.loanmaxcash.com was
registered.

69.

The LoanMax Mark was famous at the time www.loanmaxcash.com was
registered.

70.

Defendants have since registration used, and will continue to use, the
LoanMax Mark in the domain name www.loanmaxcash.com.

71.

Defendants market title-loan services on www.loanmaxcash.com.  These
services are substantively identical in kind to the services Plaintiff and the
LoanMax Lenders promote with the LoanMax Mark.

72.

In using the LoanMax Mark in the domain name www.loanmaxcash.com,
Defendants are deliberately and willfully capitalizing on the goodwill associated

with the LoanMax Mark to cause confusion or mistake about the origin of the services Defendants are marketing on www.loanmaxcash.com, to derive a benefit from Plaintiff's and the LoanMax Lenders' business and reputation, and to promote title-loan services in direct competition with Plaintiff and the LoanMax Lenders in the same channels of trade and marketing that Plaintiff and the LoanMax Lenders use to promote their services.

73.

Defendants' use of the LoanMax Mark is in fact causing, or is likely to cause, confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants on the one hand with Plaintiff and the LoanMax Lenders on the other.

74.

Defendants have a bad-faith intent to profit from its use of the LoanMax Mark in the domain name www.loanmaxcash.com.

75.

Neither Plaintiff nor the LoanMax Lenders have consented to Defendants' use of the LoanMax Mark in the domain www.loanmaxcash.com.

76.

Neither the domain www.loanmaxcash.com nor the services Defendants are promoting on www.loanmaxcash.com are affiliated, connected, or associated with Plaintiff or the LoanMax Lenders.

77.

As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiff has been, and is likely to continue to be, substantially injured, as described above.

78.

Plaintiff has no adequate remedy at law to prevent Defendants' wrongful conduct.

79.

Unless enjoined by the Court, Defendants will continue to infringe on the LoanMax Mark and otherwise violate Plaintiff's rights and injunctive relief is therefore required to prevent Defendants' practices and to ameliorate and mitigate the injury to Plaintiff.

## COUNT 8
## Georgia Statutory Unfair Competition
## (O.C.G.A. § 23-2-55)

80.

Plaintiff repeats and realleges the foregoing paragraphs of this Complaint as if fully restated herein.

81.

Defendants have encroached, and will continue to encroach, on Plaintiff's title-loan business and licensing of the LoanMax Mark by using the LoanMax Mark in connection with the sale and false advertising of title-loan services without the consent of Plaintiff.

82.

In so doing, Defendants intend to deceive and mislead the public about the origin of the services they market.

83.

As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiff has been, and is likely to continue to be, substantially injured, as described above.

84.

Plaintiff has no adequate remedy at law to prevent such unfair competition.

25

85.

Unless enjoined by the Court, Defendants will continue to engage in unfair competition, and injunctive relief is therefore required to prevent Defendants' practices and to ameliorate and mitigate the injury to Plaintiff.

## COUNT 9
**Georgia Deceptive Trade Practices & Georgia Unfair Business Practices**
**(O.C.G.A. §§ 10-1-370 through 10-1-375; 10-1-390 through 10-1-490)**

86.

Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

87.

As explained above, Defendants have engaged in unfair business and deceptive trade practices by:  (a) falsely passing off the title-loan services marketed on www.loanmaxcash.com as affiliated with Plaintiff and the LoanMax Lenders; (b) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of the services marketed on www.loanmaxcash.com; (c) falsely representing that the services marketed on www.loanmaxcash.com have sponsorship and approval of, or affiliation or connection with, Plaintiff and the LoanMax Lenders; (d) falsely representing that the services offered on www.loanmaxcash.com are of the same quality as those offered by Plaintiff and the LoanMax Lenders; (e) disparaging the services of

26

Plaintiff and the LoanMax Lenders by falsely representing that such services are offered on www.loanmaxcash.com; and (f) advertising title-loan services on www.loanmaxcash.com and other sites with the intent not to sell such services as advertised.

88.

Defendants have willfully engaged in the trade practices described in the foregoing paragraph, knowing them to be deceptive.

89.

As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiff has been and is likely to continue to be substantially injured, as described above.

90.

Plaintiff has no adequate remedy at law to prevent such deceptive trade and unfair business practices.

91.

Unless enjoined by the Court, Defendants will continue to engage in deceptive and unfair practices, and injunctive relief is therefore required to prevent such practices and to ameliorate and mitigate the injury to Plaintiff.

## COUNT 10
### Georgia Statutory False Advertising
### (O.C.G.A. §§ 10-1-420 through 10-1-427)

92.

Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

93.

Defendants have used and will continue to use Plaintiff's LoanMax Mark in commercial, online advertisements on www.loanmaxcash.com in order to mislead and trick the public into believing that:  (a) Defendants themselves provide the financial services they market; and (b) such financial services are related to, sponsored by, or affiliated with the LoanMax Lenders.

94.

The advertisements referenced in the foregoing paragraph are untrue or fraudulent.  Defendants know, or with the exercise of reasonable care should know, that such advertisements are untrue or fraudulent.

95.

Defendants' false advertisements have had a material effect on the purchasing decisions of prospective consumers of title-loan services.

96.

As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiff has been, and is likely to continue to be, substantially injured, as described above.

97.

Plaintiff has no adequate remedy at law to prevent such false advertising.

98.

Unless enjoined by the Court, Defendants will continue to promulgate false advertisements, and injunctive relief is therefore required to prevent Defendants' continued advertisements and to ameliorate and mitigate the injury to Plaintiff.

### COUNT 11
### Federal False Advertising
### (Lanham Act, 15 U.S.C. § 1125(a))

99.

Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

100.

Defendants falsely and misleadingly stated in an online commercial advertisement on www.loanmaxcash.com that:  (a) Defendants themselves provide the financial services they markets; and (b) such financial services are related to, sponsored by, or affiliated with the LoanMax Lenders.

29

101.

As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiff has been, and is likely to continue to be, substantially injured, as described above.

102.

Plaintiff has no adequate remedy at law to prevent such false advertising.

103.

Unless enjoined by the Court, Defendants will continue to promulgate false advertisements, and injunctive relief is therefore required to prevent Defendants' continued advertisements and to ameliorate and mitigate the injury to Plaintiff.

## COUNT 12
**Georgia Common Law Intentional Interference with Business Expectancy**

104.

Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

105.

Plaintiff and the LoanMax Lenders have prospective and existing business relationships with consumers in need of title-loan services.

106.

Defendants induced these consumers not to enter into or continue a business relationship with Plaintiff and the LoanMax Lenders by misleading them into

believing Defendants are or were affiliated with Plaintiff and the LoanMax

Lenders and thereby inducing them into doing business with Defendants' and

Defendants' Title Loan Clients instead of Plaintiff and the LoanMax Lenders.

107.

In perpetrating the foregoing scheme, Defendants acted improperly, without

privilege, with malice, and with intent to injure Plaintiff's and the LoanMax

Lenders' business.

108.

As a direct and proximate result of the foregoing acts, practices and conduct,

Plaintiff has been and is likely to continue to be substantially injured, as described

above.

109.

Plaintiff has no adequate remedy at law to prevent such Defendants' tortious

conduct.

110.

Unless enjoined by the Court, Defendants will continue to engage in such

tortious conduct, and injunctive relief is therefore required to prevent such conduct

and to ameliorate and mitigate the injury to Plaintiff.

## COUNT 13
### Litigation Expenses
### (O.C.G.A. § 13-6-11)

111.

Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

112.

As set forth above, Defendants have acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense.

113.

Pursuant to O.C.G.A. § 13-6-11, Plaintiff is therefore entitled to recover all the expenses it has incurred and will incur pursuing this action including, but not limited to, reasonable attorneys' fees.

## COUNT 14
### Punitive Damages

114.

Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

115.

Defendants' actions constitute willful conduct, malice, wantonness, oppression and the entire want of care which raises the presumption of conscious indifference to consequences.  As such, Plaintiff is entitled to recover punitive damages from Defendants in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

a)     Enter judgment in favor of Plaintiff and against Defendants on the counts above;

b)     Order Defendants to compensate Plaintiff in the amount of three times Plaintiff's actual damages, in accordance with 15 U.S.C. §1117(a);

c)     Order Defendants to award statutory damages to Plaintiff in the amount of $100,000.00 for Defendants' violation of 15 U.S.C. 1125(d)(1);

d)     Order Defendants to account for and disgorge the profits derived from its unlawful acts, in accordance with 15 U.S.C. §1117(a);

e)     Order Defendants to forfeit, cancel, or transfer to Plaintiff the domain name www.loanmaxcash.com pursuant to 15 U.S.C. § 1125(d)(1)(D);

f)     Order Defendants to reimburse Plaintiff for the attorneys' fees, expenses, and costs Plaintiff incurs pursuing its claims, in accordance with federal and Georgia law, including without limitation 15 U.S.C. §§ 1117(a), 10-1-373(b) and O.C.G.A. § 13-6-11;

g)     Issue a preliminary and, ultimately, a permanent injunction prohibiting Defendants, pursuant Fed. R. Civ. P. 65, 15 U.S.C. § 1116, and/or other applicable law, from using the LoanMax Mark or otherwise attempting to solicit,

divert, take away or attempt to divert or take away any existing customers of Plaintiff and the LoanMax Lenders;

h)      Order Defendants to file with the Court and serve on Plaintiff a sworn written report setting forth in detail the manner and form in which Defendants have complied with the injunction issued by this Court, pursuant to 15 U.S.C. § 1116.

i)      Grant Plaintiff prejudgment interest on the amounts awarded; and

j)      Grant Plaintiff such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all triable issues of fact.

Respectfully submitted this 23rd day of June, 2014.

WARGO & FRENCH LLP

/s/ Ryan D. Watstein
Joseph D. Wargo
Georgia Bar No. 738764
jwargo@wargofrench.com
Ryan D. Watstein
Georgia Bar No. 266019
rwatstein@wargofrench.com
999 Peachtree Street NE
26th Floor
Atlanta, GA  30309
Phone:  (404) 853-1500
Fax:  (404) 853-1501
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), the undersigned counsel for Plaintiff certifies

that counsel have prepared the foregoing **COMPLAINT** in Times New Roman 14-

point type, which is one of the font and point selections approved by the Court in

Local Rule 5.1(B).

WARGO & FRENCH LLP

/s/ Ryan D. Watstein
Ryan D. Watstein